UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES – GENERAL | 'O' | JS-6 |

| Case No. | 2:19-cv-09709-CAS-KSx | Date | June 1, 2021 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA v. TOM I. LINCIR | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |
| Melissa Briggs | Robert Horwitz | |

**Proceedings:** UNITED STATES' MOTION FOR SUMMARY JUDGMENT (Dkt. 19, filed on April 26, 2021)

DEFENDANT TOM I. LINCIR'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. PRO. 56 (Dkt. 20, filed on April 26, 2021)

## I. INTRODUCTION

On November 11, 2019, the government filed suit against defendant Tom I. Lincir to reduce certain federal tax assessments to judgment. Dkt. 1 ("Compl.").

On April 26, 2021, the parties filed cross-motions for summary judgment. Dkts. 19 ("Gov't MSJ"), 20 ("Def. MSJ"); see dkt. 21, request for judicial notice ("Def. RJN"). The parties opposed on May 3, 2021, dkts. 25 ("Gov't Opp."), 26 ("Def. Opp."); see dkt. 28, supplemental request for judicial notice ("Def. Supp. RJN"), and replied on May 10, 2021, dkts. 30 ("Def. Reply"), 31 ("Gov't Reply").[1] The Court held a hearing on June 1, 2021.

---

[1] Defendant requests that the Court take judicial notice of certain filings in this case, and his underlying Tax Court cases (Tax Court Docket Nos. 22934-89 and 13205-05L). Def. RJN. The Court **GRANTS** this request and takes judicial notice of the public and undisputed court files and record. See Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001). Defendant also requests that the Court take judicial notice of a declaration and its attachments that he filed in this case (Docket 20-2, Declaration of Robert S. Horwitz). Def. Supp. RJN. But, on a motion for summary judgment, a court considers evidence in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' | JS-6 |
|---|---|---|---|---|
| Case No. | 2:19-cv-09709-CAS-KSx | Date | June 1, 2021 | |
| Title | UNITED STATES OF AMERICA v. TOM I. LINCIR | | | |

Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II. BACKGROUND

Unless otherwise noted, the following facts are uncontroverted. See dkts. 19-1, government's statements of uncontroverted facts and conclusions of law ("Gov't SUF"), 25-1, government's statement of genuine disputes ("Gov't SDF"), 27, defendant's statement of genuine disputes of material fact ("Def. SDF").

### A. Underpayment of Taxes

In 1999, the Tax Court adjudicated the underlying tax liabilities at issue in this case, which are owed for tax years 1978, 1979, 1980, 1981, and 1982. Gov't SUF No. 4; see Lincir v. Comm'r, 77 T.C.M. (CCH) 1614, T.C. Memo 1999-98 at 12–14 (T.C. 1999). In a decision dated October 2, 2000 ("2000 Decision"), The Tax Court found defendant and his former spouse, Diane Lincir, liable for substantial tax deficiencies along with negligence penalties, increased interest on underpayments, and substantial underpayment penalties. Gov't SUF No. 5. The Tax Court specifically rejected "the notion that petitioners [were] naive and trusting individuals who were led astray by bad tax advice." Id. The Ninth Circuit affirmed. Id. Nos. 6, 11; see Lincir v. Comm'r, 32 F. App'x 278, 280 (9th Cir. 2002).

In conformity with the 2000 Decision, on February 28, 2001, the Internal Revenue Service ("IRS") assessed income taxes and penalties against defendant and Diane for the years at issue totaling $5,497,437.30. Gov't SUF Nos. 9, 10, 12. These assessments were recorded on the IRS' Official Record, Certificates of Assessments, Payments and Other Specified Matters (4340) ("Form 4340"). Id. No. 9.

Defendant challenged the propriety of the interest assessed against him, and on November 10, 2009, the Tax Court entered a decision in which it ordered the interest reduced by $473,041.15 due to interest netting ("2009 Decision"). Id. Nos. 16–17. Nevertheless, by December 12, 2019, the total liabilities owed by defendant had increased

---

the record, including declarations. Fed. R. Civ. P. 56(c). Accordingly, the Court **DENIES** defendant's request as unnecessary.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'  JS-6

| Case No. | 2:19-cv-09709-CAS-KSx | Date | June 1, 2021 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA v. TOM I. LINCIR | | |

to $12,557,294.20.[2]  Id. No. 18.  (Defendant disputes this amount, Def. SDF ¶ 4, as discussed below, see infra § II.B.4.)

### B. Offers in Compromise

Defendant has submitted at least three offers in compromise ("OIC") to the IRS since 2010.  An OIC is an offer made by a taxpayer to the Secretary of the Treasury to settle any case arising under the internal revenue laws, for an amount that is less than the full amount outstanding.  See 26 U.S.C. ("I.R.C.") § 7122(a).  OICs can be based on: (1) doubt as to liability (taxpayer disputes correct amount of tax liability), (2) doubt as to collectability (tax liability exceeds taxpayer's assets and income), or (3) promotion of effective tax administration (collection of full tax liability would cause taxpayer economic hardship, or contravene public policy or equity).  26 C.F.R. ("Treas. Reg.") § 301.7122-1(b)(1)–(3).

#### 1. First OIC

Defendant's First OIC was dated September 20, 2010, and was submitted on behalf of defendant by his then-attorney, Angelo Falcone, who has since passed away.  Gov't SUF Nos. 19–20.  Falcone was one of defendant's attorneys in fact under powers of attorney ("POA"), authorized to represent him before the IRS.  The second relevant attorney in fact under a POA was Joseph A. Broyles.

The First OIC was ostensibly based on doubt as to liability and was submitted on IRS Form 656-L, Offer in Compromise (Doubt as to Liability) 1-2006.  Gov't SUF Nos. 21, 23; see dkt. 19-4, Declaration of Melissa Briggs ("Briggs Decl."), Exh. C at 17.  It offered to pay $1,262,049.00 to settle defendant's liabilities.

The First OIC was apparently received by the IRS at its Brookhaven Service Center, located in Holtsville, New York, on September 29, 2010.[3]  As of September 29, 2010, the

---

[2] Diane has since obtained "innocent spouse relief" pursuant to I.R.C. § 6015(c) for the majority of these liabilities.  Gov't SUF No. 12; see Diane C. Lincir v. Comm'r, No. 10138-04 (Jan. 3, 2013, corrected Sept. 9, 2013).

[3] The Brookhaven campus and the Memphis, Tennessee campus are home to the Centralized Offer in Compromise ("COIC") units, which "complete initial processing" of OICs.  Internal Revenue Manual ("IRM") § 5.8.3.1.6 (02-09-2018).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'   JS-6

| Case No. | 2:19-cv-09709-CAS-KSx | Date | June 1, 2021 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA v. TOM I. LINCIR | | |

IRS' Form 4340s for defendant's account denote "Processable OIC pending." Gov't SUF No. 26; see dkt. 19-2, Declaration of Phillip Conrad ("Conrad Decl."), Exh. A ("Form 4340s") at 7, 27, 43, 58, 71.

When defendant sent the First OIC to the Brookhaven Service Center, he also attached a Request for Abatement (Form 843). Gov't SDF Nos. 12, 14. (The Request for Abatement was also apparently sent to the IRS Fresno Service Center, in Fresno, California. Gov't SDF No. 12.) This Request for Abatement was premised on the argument that interest should be abated because of what defendant claimed was the IRS' "unreasonable delay" pursuant to I.R.C. § 6404(e) and (g). Gov't SDF No. 13.

On October 14, 2010, IRS Tax Examiner Sonia R. Rodriguez, located in Brookhaven, sent a letter to defendant stating that the First OIC "can be processed," and that the IRS would "investigate [his] offer and contact [him] by November 14, 2010 with any questions or to request additional information." Dkt. 20-2, Declaration of Robert S. Horwitz ("Horwitz Decl."), Exh. 4 at 23.

The parties cite to several entries in the IRS' Integrated Collection System ("ICS"), which is a computerized system used by the IRS for various purposes, including collections. Gov't SUF No. 30. One ICS entry by an unnamed Revenue Officer ("RO"), entered on October 18, 2010, recounts an exchange between the RO and Rodriguez. According to ICS records, Rodriguez communicated that "[t]he OIC does not apparently reflect doubt as to the underlying tax liability, [but] rather seeks to get the interest abated." Conrad Decl., Exh. E at 2. Rodriguez apparently "ha[d] spoken to POA Broyles and advised that the Service does not abate interest." Id. She further "indicated that she need[ed] [an] F657 from [the RO] to reflect a recommendation that the OIC be returned as it was submitted to avoid collection and therefore was submitted solely to delay collection."[4] Id. at 2–3. Rodriquez apparently stated that "[s]he will then discuss the matter with her supervisor to determine if they will return the OIC." Id. at 3. Subsequently, the

---

[4] Form 657, Offer in Compromise Revenue Officer Report, is an IRS form that "serves to establish coordination between the field Collection RO group, the field OIC group and the COIC sites." IRM § 5.8.3.14 (11-05-2020). Form 657 includes information regarding the basis for the OIC, any investigative steps that have been taken, and whether the offer appears to have been submitted to delay collection, among other things. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' | JS-6 |
|---|---|---|---|---|
| Case No. | 2:19-cv-09709-CAS-KSx | Date | June 1, 2021 | |
| Title | UNITED STATES OF AMERICA v. TOM I. LINCIR | | | |

RO reported that he prepared a Form 657 for Rodriguez, which he "[s]ubmitted to [Group Manager] [Mary Kay] Pittner for approval." Id. at 3; see Conrad Decl., Exh. F at 3.

An ICS entry dated October 20, 2010, states that the RO spoke with AC [undefined] Ben Peeler, who indicated that Falcone "did not want to pull the OIC, rather he want[ed] the Service to look at it." Horwitz Decl., Exh. 17 at 73. Accordingly, Peeler advised the RO to provide a Form 657 to the COIC, which the RO apparently faxed to Rodriguez in Brookhaven. Id. Rodriguez confirmed she received the Form 657, and "advised that she will be preparing a memo for her supervisor's approval to return the OIC in the next few days," and that she would "advise when that ha[d] been done." Id. Defendant points out that there is no ICS entry stating that Rodriguez did in fact prepare such a memo. Def. SDF ¶ 11.

On October 22, 2010, IRS Team Leader Christine Thomas, apparently in Brookhaven, sent a letter to Falcone regarding the First OIC. See Briggs Decl., Exh. C at 19–20. (Thomas is apparently Rodriguez's supervisor. See Horwitz Decl., Exh. 17 at 83.) This letter stated, in relevant part: "We cannot process and/or further investigate the offer for the following reason: Your case is currently assigned to Revenue Officer E. Kelly." Briggs Decl., Exh. C at 20. The letter identified Rodriguez as the "person to contact." Id.

The Form 4340s for defendant's accounts reflect that, as of October 22, 2010, the "OIC [was] no longer pending because [it was] returned or rejected." Form 4340s at 7, 27, 43, 58, 71.

Despite the COIC in Brookhaven ostensibly having returned the First OIC, other IRS offices apparently were unaware of this action. For instance, on October 26, 2010, IRS Department Manager Rebecca H. Henderson, in Atlanta, Georgia, sent a letter to defendant referencing tax years 1980 and 2002. Horwitz Decl., Exh 6 at 26. This letter thanked defendant for his September 24, 2010 correspondence, and stated, in relevant part: "We haven't resolved this matter because we haven't completed all the research necessary for a complete response. We will contact you again within 45 days to let you know what action we are taking. You don't need to do anything further now on this matter." Id. (Henderson apparently referenced the wrong date, as the First OIC was dated September 20, 2010, and was received September 29, 2010.)

Additionally, on November 2, 2010, Peeler apparently emailed the unnamed RO and indicated, among other things, that "he hoped [the RO] could get the issue of the OIC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**    'O'    JS-6

| Case No. | 2:19-cv-09709-CAS-KSx | Date | June 1, 2021 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA v. TOM I. LINCIR | | |

resolved (returned) so that we can start to get some cooperation" from defendant. Horwitz Decl., Exh. 17 at 75.

And on November 17, 2010, Ron Manvilla, Accounts Management Operation Manager in Kansas City, Missouri, sent defendant a letter apparently referencing the tax years at issue, among others. Horwitz Decl., Exh. 7 at 30. This letter thanked defendant for his September 10, 2010 Form 656-L (OIC), and Form 843 (request for abatement), and stated that the correspondence would be sent to the COIC in Memphis, Tennessee because "that office can best process your request and answer your questions." Id. at 30, 32. (Again, Manvilla apparently referenced the wrong date.)

Nevertheless, the next day, November 18, 2010, the unnamed RO "[s]poke with . . . Falcone" about the OIC, apparently for the first time. Conrad Decl., Exh. E at 4. It appears the RO informed Falcone, among other things, that "[t]he OIC ha[d] been returned" because "[t]he determination was made that COIC could not process the OIC and that it was submitted solely to delay collection." Id. at 5. The RO explained to Falcone that the COIC "does not have the ability to abate interest," which was the basis for the OIC. Id. To that end, the RO encouraged Falcone to re-submit the Request for Abatement to the Fresno Service Center in case the original submission had been forwarded to the COIC in Brookhaven. Id. Falcone said he would. Id. After the RO explained that the IRS would enforce collection of defendant's liabilities considering his significant financial assets, the RO apparently "advised very clearly" that "[t]he Service ha[d] returned the OIC" because "[t]he OIC was determined to have been submitted solely to delay collection." Id. at 6. The RO then directed Falcone to submit certain documents related to the collection efforts by December 10, 2010. Id. at 7. Indeed, the next day, on November 19, 2010, the RO issued a Form 9297 to Falcone and defendant, which formally requested a series of documents pertaining to defendant's financial assets and real estate holdings. Id. at 7–9.

Also on November 19, 2010, the unnamed RO communicated with Falcone and Broyles about the OIC. Specifically, Falcone and Broyles left the RO a telephone message apparently stating that they "want[ed] to resubmit the OIC to [the RO] with the 843 claim [the request for abatement] . . . ." Id. at 10. The RO apparently returned the call and left a telephone message reiterating to Falcone that "the OIC was returned," and that "[i]t will be returned again if it is submitted under doubt as to liability seeking abatement of interest." Id. at 10. Further, the RO advised that any request for abatement should be filed with the Fresno Service Center, and that "the Service will proceed with collection of the liabilities

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'  JS-6

| | | | |
|---|---|---|---|
| Case No. | 2:19-cv-09709-CAS-KSx | Date | June 1, 2021 |
| Title | UNITED STATES OF AMERICA v. TOM I. LINCIR | | |

as they are unless the Service at some point determines that an abatement of interest is appropriate." Id.

On November 23, 2010, the RO received a telephone message from Broyles, who stated he had complaints regarding certain statements the RO had made with regard to re-filing an OIC. Horwitz Decl., Exh. 17 at 83. The RO apparently returned the call that day, and informed Broyles that the OIC had been "handled and returned by COIC Brookhaven," and that Broyles should therefore contact Rodriguez's supervisor, Thomas. Id.

In a series of correspondence over the months from June 23, 2011, to July 10, 2012, the IRS denied defendant's Request for Abatement under I.R.C. § 6404(e) and (g), the purported basis for the First OIC. Gov't SDF Nos. 20–26.

    2.    <u>Second OIC</u>

While defendant and the IRS were corresponding regarding the Request for Abatement, defendant submitted the Second OIC, dated October 21, 2011. Gov't SUF No. 35; see Conrad Decl., Exh. D at 6–9. This OIC was submitted on Form 656, Offer in Compromise (Rev. 3-2011), on the basis of doubt as to collectability. Conrad Decl., Exh. D at 6. It offered to settle defendant's liabilities for $1,352,275.00. Id. at 7. However, in a letter accompanying the Form 656, Falcone wrote that "the offer in the Form 656, Offer in Compromise is contingent on failure of the IRS to approve the Request for Abatement." Horwitz Decl., Exh. 18 at 93.

The Second OIC was received at the IRS' San Diego Office on October 26, 2011, and by the IRS' Memphis Service Center on November 4, 2011. Gov't SDF No. 30. As of November 8, 2011, the Form 4340s for defendant's account denote "Processable OIC pending." Form 4340s at 9, 27, 44, 58, 73.

According to the ICS records, in April 2012, several IRS personnel discussed the Second OIC, and determined at least one other pending investigation—namely Diane's innocent spouse proceedings—prevented their considering the OIC. Conrad Decl., Exh. D at 34. Unlike with the First OIC, there is no mention of a Form 657. Nevertheless, on May 31, 2012, the unnamed RO apparently "[a]dvised [Falcone] that [the] OIC was going to be returned for other investigations pending." Conrad Decl., Exh. D at 26.

And on June 5, 2012, IRS Group Manager D. L. Beeman sent letters to defendant and Falcone stating: "We have closed our file on your offer and are returning your Form 656, Offer in Compromise for the following reason(s): Other investigations are pending

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'   JS-6

| Case No. | 2:19-cv-09709-CAS-KSx | Date | June 1, 2021 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA v. TOM I. LINCIR | | |

that may affect the liability sought to be compromised or the grounds upon which it was submitted."[5] Conrad Decl., Exh. D at 3–5. The letter bore the notation "SB Letter Return (AOIC) (5-2012)," and originated from the IRS Group 32 OIC in Glendale, California.[6] Id. at 3.

ICS records from June 5, 2012, report that a "return letter was dated and mailed to [defendant] and POA on 06/05/2012," and states, "closing AOIC and ICS as a return." Conrad Decl., Exh. E at 12. Another entry that day states, "OIC returned." Id. A copy of the Second OIC is marked, "Returned 06/05/2012," and the IRS administrative file for the Second OIC has a closure sheet stating, "Return Letter: 6/5/2012." Conrad Decl., Exh. D at 2, 6. And as with the First OIC, the Form 4340s for defendant's account denote, as of June 5, 2012, "[p]rocessable OIC no longer pending because returned or rejected." Form 4340s at 10, 29, 45, 59, 73.

Despite the Second OIC having been returned on June 5, 2012, on June 15, 2012, defendant sent a Form 656-PPV (March 2009), Offer in Compromise – Periodic Payment Voucher, to the Memphis COIC in connection with his Second OIC. Briggs Decl., Exh. C at 65. Attached was a check for $5,000. Id. at 67. The Memphis office received the Form 656-PPV on June 21, 2012, and returned it the next day, on June 22, 2012. Id. at 64. On the Form 3699 (Rev. January 1983), Return of Documents to Taxpayer, which returned the periodic payment voucher, a box marked "Offer Closed" is checked. Id.

On June 26, 2012, the unidentified RO spoke on the telephone with defendant's POA (unspecified which), and apparently "discussed [the] return." Conrad Decl., Exh. E at 13. The RO noted that, "[a]pparently [the] offer [was] being returned." Id.

---

[5] Defendant does not dispute that the IRS sent a letter to defendant, but does dispute that it sent a letter to Falcone. Although the record contains a letter from the IRS to Falcone dated June 5, 2012, defendant contends it lists the wrong address for Falcone. Def. SDF ¶ 17.

[6] The Automated OIC ("AOIC") system is a "[c]omputer application where offers in compromise are recorded and monitored from receipt to closure." IRM § 1.4.52.1.6 (03-22-2019).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'   JS-6

| Case No. | 2:19-cv-09709-CAS-KSx | Date | June 1, 2021 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA v. TOM I. LINCIR | | |

Several weeks later, on July 18, 2012, the RO reported that Falcone faxed him an index of business appraisal, apparently "under the impression that the OIC was still open, and the OIC specialist was waiting for his valuation." Id. The RO apparently "reminded [Falcone] [the OIC specialist] told him [the] offer was being returned, and a letter was sent on 6/5 . . . ." Id. Falcone apparently stated he "had never received" the letter, and that he "want[ed] to resubmit [the] offer . . . ." Id. The RO, however, noted that "the issues outlined by the OIC specialist ha[d] not been resolved," namely, the innocent spouse investigation was still pending. Id. The RO told Falcone he "would contact him once [he] discuss[ed] the case w/ Counse[l]." Id.

Although there is no record of the RO contacting Falcone after the July 18, 2012 telephone call, on August 2, 2012, Falcone faxed another business appraisal to the RO, this one valuing defendant's business at zero dollars. Id. at 14.

Then, on October 31, 2012, the RO apparently returned a call to defendant's POA (unspecified which), in which the POA "indicated [defendant] wanted to submit another OIC." Id. at 18. The ICS records do not elaborate on this conversation.

On November 20, 2012, the RO received a telephone call from Falcone informing him that Diane had settled with the IRS, and that defendant would like to submit another OIC "which would stipulate that Diane will release her half of the equity in property if [the] IRS settles w/ [defendant]." Id. at 19. The RO apparently told Falcone that he would review any OIC he submitted. Id.

    3.    <u>Third OIC</u>

After the Second OIC had been returned, defendant filed the Third OIC, dated February 11, 2013. See Conrad Decl., Exh. F at 5–8. Like the Second OIC, this OIC was submitted on Form 656, Offer in Compromise (Rev. 3-2011), on the basis of doubt as to collectability. Id. at 5. It offered to settle defendant's liabilities for $141,505.00. Id. at 6.

The Third OIC was received by the IRS on February 14, 2013. Horwitz Decl., Exh. 19 at 101. (The Third OIC is stamped as received on March 4, 2013, but it appears this is the date it was received in the Brookhaven COIC. Gov't SUF No. 65.) As of March 5, 2013, the Form 4340s for defendant's account for each year at issue denote "Processable OIC pending." Form 4340s at 10, 30, 45, 59, 73. (It appears the Form 4340s were updated once the OIC arrived in Brookhaven.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' | JS-6 |
|---|---|---|---|---|
| Case No. | 2:19-cv-09709-CAS-KSx | | Date | June 1, 2021 |
| Title | UNITED STATES OF AMERICA v. TOM I. LINCIR | | | |

According to the ICS records, on February 26, 2013, the unnamed RO "[r]eviewed the offer," and concluded, based on the amount offered, that it was "frivolous." Conrad Decl., Exh. E at 23. The RO apparently "[p]repared [a Form] 657 indicating [the] offer was submitted to delay collection," which he "forwarded to [the Group Manager]." Id. That same day, the RO spoke with Falcone on the telephone and informed him that "the offer was frivolous." Id. at 24.

On February 28, 2013, the RO apparently faxed the Form 657 to the Group Manager, "who signed the document." Id. And on March 1, 2013, the RO apparently mailed the OIC to the Brookhaven COIC. Id.

On March 5, 2013, IRS Process Examiner Manager C. DiBiasi, apparently at the Brookhaven COIC, sent a letter to defendant stating: "We have closed our file on your offer and are returning your Form 656, Offer in Compromise for the following reason(s): We have determined that your offer was submitted solely to hinder or delay our collection actions which are expected to collect significantly more than the amount you have offered." Conrad Decl., Exh. F at 1. Like the letter retuning the Second OIC, the March 5, 2013 letter is marked "SB Letter Return (AOIC) (5-2012)." Id. DiBiasi also sent a letter to Broyles attaching a copy of the correspondence to defendant.[7] Id. at 2.

As with the Second OIC, in the record is a copy of the Third OIC stamped, "Return March 5, 2013." Id. at 5. Also as with the Second OIC, the record contains a Form 657, signed by RO P. Brannen and approved by Pittner, noting that the Third OIC "appear[s] to have been submitted 'solely to delay' collection . . . ." Id. at 3. The Form 4340s for defendant's account denote "Processable OIC no longer pending because returned or rejected" as of March 5, 2013. Form 4340s at 11, 30, 45, 59, 73. However, unlike the Second OIC, there does not appear to be an ICS entry stating, "offer returned," or "closing AOIC and ICS as a return." See Conrad Decl., Exh. E at 12, 25.

---

[7] Defendant does not dispute that the IRS sent a letter to Broyles, but states that defendant himself "has no recollection of receiving the March 5, 2013 letter." Def. SDF ¶ 27. There is a letter from the IRS to defendant dated March 5, 2013, in the record. See Conrad Decl., Exh. F at 1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | 'O' | JS-6 |
|---|---|---|---|
| Case No. | 2:19-cv-09709-CAS-KSx | Date | June 1, 2021 |
| Title | UNITED STATES OF AMERICA v. TOM I. LINCIR | | |

4. Disputes as to Amount of Liabilities

The OICs notwithstanding, defendant disputes that the $12,557,294.20 sought by the government has been properly calculated. Def. SDF ¶ 5. Specifically, defendant argues the IRS never abated the interest as ordered in the 2009 Decision. Defendant contends, "[i]t appears that [the IRS], on the date it abated interest, reassessed the same amount of interest, and thus did not comply with the Tax Court's memorandum opinion and decision." Id. ¶ 4.

Defendant now moves for summary judgment on the ground that the First OIC was never returned, and thus was accepted by operation of law. The government moves for summary judgment on the ground that the Tax Court's rulings are binding.

## III. LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the evidence presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' | JS-6 |
|---|---|---|---|---|
| Case No. | 2:19-cv-09709-CAS-KSx | Date | June 1, 2021 | |
| Title | UNITED STATES OF AMERICA v. TOM I. LINCIR | | | |

favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## IV. DISCUSSION

At issue here is whether the IRS accepted the First OIC by operation of law. If it did, then summary judgment cannot be entered for the government, as defendant's liabilities would be reduced to only $1,262,049.00. If the IRS did not accept the First OIC, then the Court must determine whether the government has established that summary judgment should be entered for the amount of the liabilities determined by the Tax Court. The Court addresses each issue in turn.

### A. Acceptance of First OIC

#### 1. Regulatory Scheme

Section 7122 of the Internal Revenue Code ("Section 7122") authorizes the compromise of any civil or criminal case arising under the internal revenue laws. I.R.C. § 7122(a). At issue here is Section 7122(f), which provides that an OIC "shall be deemed to be accepted . . . if such offer is not rejected by the Secretary before the date which is 24 months after the date of the submission of such offer." I.R.C. § 7122(f).

The requirements for rejecting an offer are set forth in Treasury Regulations, section 301.7122-1 ("Section 301.7122-1"), promulgated pursuant to Section 7122(d)(1). Section 301.7122-1(f)(1) states that "[a]n offer to compromise has not been rejected until the IRS issues a written notice to the taxpayer or his representative, advising of the rejection, the reason(s) for rejection, and the right to an appeal." The parties do not dispute that, in this case, the IRS did not issue such notice to defendant. The first question before the Court, then, is whether a "return" of an offer constitutes a "rejection" under Section 7122(f).

Although Section 7122(f) makes no mention of "returned" OICs, Section 7122(d) and certain IRS regulations and guidance do. For instance, Section 7122(d)(3)(C) states that an OIC which does not meet certain requirements "may be returned to the taxpayer as unprocessable." I.R.C. § 7122(d)(3)(C). Section 301.7122-1(d)(2), in turn, establishes that "[a]n offer returned following acceptance for processing is deemed pending only for the

Case 2:19-cv-09709-CAS-KS   Document 34   Filed 06/01/21   Page 13 of 20   Page ID #:1046

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'   JS-6

| Case No. | 2:19-cv-09709-CAS-KSx | Date | June 1, 2021 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA v. TOM I. LINCIR | | |

period between the date the offer is accepted for processing and the date the IRS returns the offer to the taxpayer." Treas. Reg. § 301.7122-1(d)(2); see Rev. Proc. 2003-71 § 5.06 (same). Finally, IRS Notice 2006-68, which provides guidance on Section 7122, addresses returns in the context of Section 7122(f), specifically. It states that "[a]n offer will not be deemed to be accepted if the offer is, within the 24-month period, . . . returned by the Service to the taxpayer as nonprocessable or no longer processable," among other things. IRS Not. 2006-68 § 1.07. At least one Ninth Circuit case has cited to IRS Notice 2006-68 for this proposition. See Brown v. Comm'r of Internal Revenue, 826 F. App'x 673, 674 (9th Cir. 2020) (holding that taxpayer's "offer was not accepted by operation of law under 26 U.S.C. § 7122(f)" because "[t]he IRS returned [his] offer well before 24 months had elapsed since the submission of the offer-in-compromise" (citing IRS Not. 2006-68 § 1.07)). Accordingly, a return operates as a rejection under Section 7122(f).[8]

The Court now addresses whether there is a triable issue in fact as to whether the IRS returned the First OIC.

### 2. Return of First OIC

Defendant argues that the First OIC was submitted at the latest on September 29, 2010, and that the IRS failed to return or reject it by September 29, 2012. Def. MSJ at 17. Defendant contends the October 22, 2010 letter is insufficient to constitute a return, and that there is no record of the IRS sending any other letter sufficient to constitute a return. Id. at 16. Furthermore, defendant argues the IRS records regarding the First OIC lack formal internal documentation that the OIC was returned, such as a Form 657, a closure sheet, or a copy of the OIC stamped "returned." Id. Finally, defendant argues the IRS' treatment of his Second and Third OICs support the notion that the IRS did not consider the First OIC returned or rejected. Id. at 17.

The government responds that the IRS is not required to use "magic words" to return an OIC, and that a letter can effectuate a return even if it does not use the term "return." Gov't Opp. to MSJ at 5. In the government's view, "the language of § 7122 and Treasury

---

[8] Initially, defendant appeared to argue that a return did not function as a rejection for purposes of Section 7122(f), see Def. MSJ at 13, but has since abandoned that argument, see Def. Reply at 1–2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' | JS-6 |
|---|---|---|---|---|
| Case No. | 2:19-cv-09709-CAS-KSx | Date | June 1, 2021 | |
| Title | UNITED STATES OF AMERICA v. TOM I. LINCIR | | | |

Regulations demonstrates that the term 'return' is intertwined with the term 'nonprocessable,'" and that, therefore, when the October 22, 2010 letter stated the OIC could not be processed, it effectuated a return. Id. Additionally, the government argues that the language in the October 22, 2010 letter is immaterial because a taxpayer does not even have to receive a letter returning an OIC for the OIC to be returned—what counts is that the IRS mailed the letter. Id. at 6 (citing Rev. Proc. 2003-71).

There is limited guidance on what constitutes a "return." The only statutory or regulatory guidance of which this Court is aware is found in Revenue Procedure 2003-71, which "supplements and clarifies the procedures identified in § 301.7122-1." Rev. Proc. 2003-71 § 2.02. According to the Revenue Procedure, "[a]n offer to compromise is considered to be returned on the day the Service mails, or personally delivers, a written letter to the taxpayer informing the taxpayer of the decision to return the offer." Rev. Proc. 2003-71 § 5.06.

Revenue Procedure 2003-71 does not require that the IRS use "magic words" to effectuate the return. The fact that a return becomes effective the day the Service "mails" the letter further indicates that there is no magic word requirement—the return is effective even before the taxpayer received it. See United States v. Thompson, 596 F. Supp. 2d 538, 542 (E.D.N.Y. 2009) (addressing rejection of OIC, concluding defendant's allegation that he "never actually received the IRS's rejection letter is entirely immaterial, as '[r]ejection [of an offer-in-compromise] is effective as of the date on the rejection letter[,]' not as of the date it is received." (quoting Rev. Proc. 2003-71 § 9.01) (alterations in original)). Although the Court is aware of no cases specifically addressing whether a letter must include certain language to be effective as a return, the only case of which the Court is aware to have addressed whether a rejection required magic words found that it did not. See In re Hobbs, No. 95-5131XS, 1996 WL 468979, at *4 (Bankr. N.D. Iowa June 5, 1996) ("The Treasury Regulations prescribe no particular formality for rejection of an offer in compromise other than notice in writing. [Citation.] A letter from the IRS taking a position legally inconsistent with the notion of a pending offer should be construed as terminating the pendency of the offer, notwithstanding the IRS's failure to use specific words prescribed in the Internal Revenue Manual.").

The question, then, is whether the October 22, 2010 letter "informed [defendant] of the decision to return the offer." The letter stated: "We cannot process and/or further investigate the offer . . . ." This, on its face, informed defendant that the offer would not be considered. See Mason v. Comm'r of Internal Revenue, T.C.M. (RIA) 2021-064 (T.C.

Case 2:19-cv-09709-CAS-KS   Document 34   Filed 06/01/21   Page 15 of 20   Page ID #:1048

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        'O'        JS-6

| Case No. | 2:19-cv-09709-CAS-KSx | Date | June 1, 2021 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA v. TOM I. LINCIR | | |

2021) ("When an OIC is returned, the IRS has not considered it on the merits . . . ."). The fact that it explained the offer would not be acted upon because "[the] case is currently assigned to Revenue Officer E. Kelly" is of no moment. This statement did not suggest the offer was, in fact, being considered—it does not actually reference the offer. Even if the October 22, 2010 letter left defendant unclear as to *why* the IRS could not process or investigate his OIC, it was unambiguous on the point that IRS could not consider the OIC. Finally, the letter did not suggest it was a preliminary decision that may be revisited pending certain developments. See United States v. McGee, 993 F.2d 184, 186 (9th Cir. 1993) (no rejection where "letter was merely notice of a proposed rejection," concluding, "'[i]f we do not hear from you within 15 days, we will have to send you a formal rejection of your offer in compromise'" (alteration in original)). Thus, the October 22, 2010 letter sufficiently documented and informed defendant of the IRS' decision not to consider the First OIC, and thus effectuated a return of the offer.

Defendant's arguments to the contrary are not persuasive. First, defendant argues that stating the IRS "cannot process" an offer is not equivalent to stating that the offer is returned. Def. Reply at 2. But the relevant question is not whether the IRS used the term "return" or a synonym for "return"; the question is whether the October 22, 2010 letter informed defendant of the IRS' decision that it would not consider the First OIC, which, as discussed above, it did. In any event, the statutes and regulations referring to returns of OIC clearly indicate that OICs are returned when they are "nonprocessable" or "no longer processable." See I.R.C. § 7122(d)(3)(C); IRS Not. 2006-68 § 1.07; Rev. Proc. 2003-71 § 5.04(4); see also Treas. Regs. § 301.7122-1(d)(2); Rev. Proc. 2003-71 § 5.06.

Second, defendant argues that because the October 22, 2010 letter is phrased in the alternative, it could read: "We cannot . . . further investigate the offer . . . ." Def. Reply at 3. Because neither Section 301.7122-1(d)(2) nor Revenue Procedure 2003-71 § 5.04 mention "inability to investigate" as a reason the IRS can return an OIC, defendant argues, a letter informing a taxpayer that the IRS cannot investigate an OIC cannot operate as a return of the OIC. Id. This argument is also unpersuasive because, again, the relevant question is whether, taken as a whole, the October 22, 2010 letter informed defendant of the IRS' decision that it could not process the First OIC. A letter stating that the OIC cannot be further investigated sufficiently informs the reader that the OIC will not be considered. Furthermore, there is no reason to believe that Section 301.7122-1(d)(2) or Revenue Procedure 2003-71 § 5.04 list the only reasons the IRS can return an OIC. In fact, the text of the Procedure clearly establishes that it is not conclusive. For instance, Section 301.7122-1(d)(2) notes the IRS may return an OIC if the taxpayer fails to submit additional

Case 2:19-cv-09709-CAS-KS   Document 34   Filed 06/01/21   Page 16 of 20   Page ID #:1049

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**    'O'    JS-6

| Case No. | 2:19-cv-09709-CAS-KSx | Date | June 1, 2021 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA v. TOM I. LINCIR | | |

information requested by the IRS, which is not listed in Revenue Procedure 2003-71 § 5.04; and Revenue Procedure 2003-71 § 5.04 states the IRS may return an OIC if the taxpayer files for bankruptcy, which Section 301.7122-1(d)(2) does not. In any event, the October 22, 2010 letter was not the first time the IRS referred to "investigating" defendant's OIC. The October 14, 2010 letter stated that the IRS would "investigate [the] offer and contact [defendant] by November 14, 2010 . . . ." So when defendant received the October 22, 2010 letter, stating the IRS "cannot . . . further investigate" the offer, he was effectively informed of the IRS' decision to return the offer.

The conclusion that the October 22, 2010 letter sufficiently informed defendant of the IRS' decision to return the First OIC such as to avoid Section 7122(f) is in keeping with the legislative intent behind that section. Section 7122(f) was added to the Internal Revenue Code by the Tax Increase Prevention and Reconciliation Act of 2005 ("TIPRA"), P.L. 109-222, May 17, 2006, 120 Stat 345. The TIPRA Conference Report acknowledges ongoing delay in responding to OICs, observing that the IRS at that time took up to 18 months to review them. Accordingly, the addition of Section 7122(f) was characterized as "provid[ing] that an offer is deemed accepted if the IRS does not make a decision with respect to the offer within two years from the date the offer was submitted." H.R. Conf. Rep. 109-455, 234, 2006 U.S.C.C.A.N. 234, 421. This suggests that Congress' intent was for Section 7122(f) to encourage the IRS to take timely action on OICs, which the IRS did in this case. The IRS promptly took internal action on the First OIC, was in regular contact with defendant's attorneys in fact regarding the offer, and promptly notified defendant it would not be processed. In these circumstances, finding that the October 22, 2010 letter was deficient for purposes of Section 7122(f) would be inconsistent with the statute's purpose.

Indeed, beyond the text of the October 22, 2010 letter itself, the circumstances surrounding the letter support the conclusion that the IRS decided to return the First OIC. First, ICS records show that IRS personnel assigned to the OIC and defendant's case discussed returning the First OIC and took steps toward returning it, such as preparing a Form 657. See Conrad Decl., Exh. E at 2, 3; Horwitz Decl., Exh. 17 at 73, 75. The Form 4340s also corroborate that the First OIC was returned on October 22, 2010. Form 4340s at 7, 27, 43, 58, 71.

Furthermore, the circumstances around the First OIC support the conclusion that defendant in fact *knew* the IRS had decided to return the offer. For instance, it appears the IRS expressly informed Falcone and Broyles, on several occasions, that the First OIC had

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' | JS-6 |
|---|---|---|---|---|
| Case No. | 2:19-cv-09709-CAS-KSx | Date | June 1, 2021 | |
| Title | UNITED STATES OF AMERICA v. TOM I. LINCIR | | | |

been returned. See Conrad Decl., Exh. E at 5, 6, 10; Horwitz Decl., Exh. 17 at 83. Falcone was informed that collections would be proceeding, which is inconsistent with there being a pending OIC. Conrad Decl., Exh. E at 6. Falcone and Broyles even apparently stated that they "want[ed] to resubmit the OIC to [the RO]," which strongly suggests they knew the First OIC had been returned. Id. at 10. And when, on July 10, 2012—still before the 24-month window closed—defendant was informed that his Request for Abatement, which was the basis for the First OIC, was denied, it would have been unavoidably clear that the First OIC had, in fact, been returned. Finally, the fact that defendant submitted the Second OIC roughly a year before the 24-month time limit also strongly suggests that he knew the First OIC was not still pending.

It is the case that, as defendant points out, IRS offices in Atlanta and Kansas City, on October 26, 2010, and November 17, 2010, respectively, sent letters to defendant that suggested the First OIC was still being processed or considered. But neither of these letters were sent by the contact persons identified in the October 22, 2010 letter, namely, Rodriguez and Kelly, or anyone else involved with the OIC to that point. And, in conversations as late as November 23, 2010, Falcone and Broyles were expressly told that the First OIC had been returned, as mentioned above. Finally, the fact that defendant's POAs said they wanted to "resubmit" the OIC, and in fact *did* submit the Second OIC, compels the conclusion that defendant knew the First OIC was returned.

In sum, as discussed above, the October 22, 2010 letter was, standing alone, sufficient to inform defendant that the First OIC had been returned. The circumstances surrounding that letter and the OIC further support this conclusion. As such, defendant has not raised a genuine dispute of fact on this issue. Accordingly, the First OIC was not pending for more than 24-months, and was thus not accepted by operation of law.[9]

---

[9] In its tentative order, the Court noted that the Second OIC arguably operated as a matter of law to revoke the First OIC. See 1 Corbin on Contracts § 2.20 (2020) ("[T]he making of a new offer involving the same subject matter, communicated to the offeree, will end the power to accept the original offer, without using any express words of revocation."). At oral argument, counsel for defendant argued that, because defendant presented the Second OIC as being contingent upon the IRS' rejection of the Request for Abatement, it did not operate to revoke the First OIC. However, because the parties did not brief this issue and because determination of this issue is not necessary to the Court's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'  JS-6

| | | | |
|---|---|---|---|
| Case No. | 2:19-cv-09709-CAS-KSx | Date | June 1, 2021 |
| Title | UNITED STATES OF AMERICA v. TOM I. LINCIR | | |

### B. Underlying Liabilities

The government argues that defendant cannot re-litigate his underlying liabilities in this Court because the Tax Court has already rendered a judgment, which is preclusive here. Gov't MSJ at 7; see Russell v. United States, 592 F.2d 1069, 1072 (9th Cir. 1979). The government further argues that the $12,557,294.20 liability it seeks to reduce to judgment is in accord with the Tax Court's decision. Gov't MSJ at 7. It points out that the Form 4340s submitted match the liabilities as determined by the Tax Court's 2000 decision, as well as the abatements ordered in the 2009 Decision. Id. at 7–8.

Defendant responds that there is a genuine dispute of material fact as to whether the IRS in fact abated defendant's interest liabilities as required by the Tax Court's 2009 decision. Def. Opp. at 7. Defendant questions why it took the IRS roughly a year to abate the interest after the 2009 Decision. Def. Opp. at 8. More significantly, though, defendant argues that the Form 4340s in the record show that the IRS re-assessed the interest the same day as, or within days of, abating it. Id.

In the 2009 decision, the Tax Court ordered defendant's outstanding interest abated by $473,041.15 for the tax years at issue. The decision document does not require any particular amount to be abated from any specific years, nor does it require the abatement be implemented by any particular date. The Form 4340s, however, suggest the IRS determined to abate the interest as follows:

| Tax Year | Date Abated | Amount Abated |
|---|---|---|
| 1978 | February 21, 2011 | $ 460,463.08 |
| 1979 | February 21, 2011 | $ 5,951.96 |
| 1980 | January 10, 2011 | $ 1,907.57 |
| 1982 | January 10, 2011 | $ 4,718.54 |
| Total: | | $ 473,041.15 |

Form 4340s at 8, 28–29, 43, 71.

---

conclusion, the Court proceeds without discussing the legal effect of the Second OIC on the First OIC.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O' | JS-6 |
|---|---|---|---|---|
| Case No. | 2:19-cv-09709-CAS-KSx | Date | June 1, 2021 | |
| Title | UNITED STATES OF AMERICA v. TOM I. LINCIR | | | |

Defendant disputes that the IRS actually made these abatements. With regard to tax year 1978, defendant points out that the IRS both abated $460,463.08 and assessed $460,463.07 on February 21, 2011, ostensibly negating the abatement. But this ignores the fact that the IRS abated an additional $460,463.07 on February 7, 2011. This results in net abatement of $460,463.08. As to tax year 1979, defendant points out that the IRS both abated $5,951.96 and assessed $5,951.69 on February 21, 2011. But, again, this ignores that fact that the IRS abated $5,951.69 on January 10, 2011. This leaves net abatement of $5,951.96. Accordingly, the Form 4340s show that at least $466,415.04 in interest have been abated.

Defendant's argument for tax years 1980 and 1982 is somewhat different. With respect to tax year 1980, defendant observes that the IRS abated $873,853.31 in interest on January 3, 2011, and $1,907.57 on January 10, 2011. This amounts to a total of $875,760.88 in abatements. But, also on January 10, 2011, the IRS assessed that amount— $875,760.88—in interest. And for tax year 1982, the IRS abated $817,742.96 in interest on January 3, 2011, and $4,718.54 on January 10, 2011. This amounts to a total of $822,461.50 in abatements. As with tax year 1980, though, the IRS assessed that amount— $822,461.50—also on January 10, 2011. Accordingly, defendant argues the $1,907.57 ostensibly abated from the tax year 1978 liabilities, and the $4,718.54 from the tax year 1979 liabilities, have not been abated.

Therefore, defendant's argument is effectively that $6,626.11 of the $473,041.15 ordered abated by the Tax Court has not been abated. But defendant's argument is not supported by the evidence in the record, and relies on speculation. First, the Form 4340s show numerous abatements and assessments of interest for the tax years in question, many of which defendant has not factored into his analysis. Defendant has failed to show that no other abatements amount to the remaining $6,626.11 ordered abated by the Tax Court. See Nelson v. Pima Cmty. Coll., 83 F.3d 1075, 1081–82 (9th Cir. 1996) ("The mere existence of a 'scintilla' of evidence is not enough to create a 'genuine issue of material fact' in order to preclude summary judgment. [Citation.] Likewise, mere allegation and speculation do not create a factual dispute for purposes of summary judgment." (quotation and citation omitted)). Defendant offers no evidence to defeat summary judgment. Accordingly, the Court is presented with Form 4340s, which are presumed accurate, showing four entries amounting to $473,041.15 in abatements—precisely the amount ordered abated by the Tax Court. See Hansen v. United States, 7 F.3d 138 (9th Cir. 1993) ("Form 4340 is probative evidence in and of itself and, 'in the absence of contrary evidence, [is] sufficient to establish that notices and assessments were properly made'" (quoting

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**       'O'       JS-6

| Case No. | 2:19-cv-09709-CAS-KSx | Date | June 1, 2021 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA v. TOM I. LINCIR | | |

Hughes v. United States, 953 F.2d 531, 535 (9th Cir. 1992)) (alteration in original)). On this record, there is no genuine issue of material fact that defendant's outstanding liabilities amount to $12,557,294.20, and summary judgment is properly granted for the government in that amount.

**V.     CONCLUSION**

In accordance with the foregoing, the Court **GRANTS** the government's motion for summary judgment, and **DENIES** defendant's motion for summary judgment.

IT IS SO ORDERED.

|  | 00 | : | 17 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |